UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 10-118-GWU


DIANA LYNN ROSE,                                                PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

> 1.    Is the claimant currently engaged in substantial gainful activity?
>        If so, the claimant is not disabled and the claim is denied.
>
> 2.    If the claimant is not currently engaged in substantial gainful
>        activity, does he have any "severe" impairment or combination
>        of impairments--i.e., any impairments significantly limiting his
>        physical or mental ability to do basic work activities?  If not, a
>        finding of non-disability is made and the claim is denied.
>
> 3.    The third step requires the Commissioner to determine
>        whether the claimant's severe impairment(s) or combination of

1

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Diana Lynn Rose, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of low back pain, leg pain, migraine headaches, and an anxiety disorder.  (Tr. 16).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ found that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 17-20).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 52-year-old woman with a tenth grade education and past work experience as a patient aide and sewing machine operator, could perform any jobs if she were limited to light level exertion, and also had the following non-exertional restrictions. (Tr. 33).  She: (1) could not climb ladders, ropes, or scaffolds; (2) could only occasionally stoop, crouch, or crawl; (3) could not be exposed to vibrating machinery; (4) could not be required to drive; and (5) would have a "limited but satisfactory" ability to deal with coworkers and supervisors and deal with work stress.  (Tr. 33-4).  The VE testified that there were jobs that such a person could perform at the light and sedentary levels, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 34-5).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.  There is an additional issue in that the plaintiff's Date Last Insured (DLI) for the purposes of her DIB application was June 30, 2006 (Tr. 97), meaning that she was required to establish disability prior to that date in order to receive DIB.  Her SSI application is not affected.

The plaintiff alleged disability due to back pain, migraine headaches, and ulcers, stating that she had trouble with sitting, among other issues.  (Tr. 103).  She also testified that she was unable to stand for long periods.  (Tr. 29).

All three of the examining sources to offer opinions indicated that the plaintiff would have some restriction on sitting and/or standing and walking.  Dr. Raymond Santucci conducted a consultative examination on November 11, 2006, and did note some positive findings such as diminished straight leg raising on the left, tenderness of the hips on palpation, and diminished sensation to pinprick and light touch across the L5-S1 nerve distribution in the left leg.  (Tr. 191).  He suspected that the plaintiff had either sciatica or disc disease and a lumbar MRI would be beneficial.  (Tr. 192).[1]  In terms of functional capacity, Dr. Santucci made the general statement that the plaintiff was capable of performing a mild to moderate

_____

[1]An x-ray of the lumbar spine taken the same day as Dr. Santucci's examination was interpreted as normal.  (Tr. 193).

amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects.  (Id.).

Christopher McNevin, a chiropractor, reported that he had treated the plaintiff for complaints of severe low back pain radiating down her left leg.  (Tr. 196).  He assessed chronic sciatica, and opined that she was capable of performing mild or moderate amounts of sitting, walking, standing, bending, kneeling, pulling, and lifting not more than 20 pounds.  (Tr. 197).  Although a chiropractor is not an acceptable medical source under the Commissioner's regulations at 20 C.F.R. § 404.1513, a chiropractor's opinion can be considered as one of the "other sources" mentioned in the regulation, and on this basis, it is noteworthy that the treating chiropractic source reached essentially the same conclusions as the consultative examiner, Dr. Santucci.

Finally, the plaintiff sought treatment from Dr. Jonathan Ruby in March, 2007, and the transcript contains records of three office visits over the next four months. (Tr. 254-6).  Dr. Ruby's diagnoses included low back strain and chronic lumbar pain with radiculopathy, and he prescribed several fairly strong medications, including Lortab, Neurontin, and Flexeril.  (Tr. 254.).  He also recommended moist heat and stretching.  (Id.).  On October 3, 2007, following the administrative hearing, Dr. Ruby submitted a physical residual functional capacity form which limited the plaintiff to lifting 21 to 50 pounds occasionally and 11 to 20 pounds frequently, sitting three hours a day, standing three hours a day, and walking one hour per day "with rests."

(Tr. 263).   He additionally listed other restrictions such as never crawling or climbing, occasionally bending, squatting, and reaching above shoulder level, an inability to use the right hand for repetitive grasping, pushing, pulling, or fine manipulation, a total restriction on work at unprotected heights, a moderate restriction on being around moving machinery, and a mild restriction on exposure to marked changes in temperature and humidity.  (Id.).

The ALJ found that the objective evidence did not support the claimant's subjective complaints of totally disabling pain and restriction, and noted that there was no radiographic evidence to support her complaints of pain radiating into the legs.  (Tr. 18).  He stated that he accepted the "opinions of state agency reviewing physicians who reported limitation to light exertion with no more than occasional climbing, stooping, crouching or crawling." (Id.).[2]  The ALJ summarized Dr. Ruby's report, including the lifting and sitting, standing, and walking limitations, but merely stated that it was "consistent with the ability to perform medium exertion [but] I give the claimant's complaints partial credibility and find she is limited to a range of light work."

_____

[2]Although the ALJ cited Exhibits 6F and 10F as containing the opinions of state agency reviewers, Exhibit 6F was Dr. Santucci's report, which does not contain any specific restrictions beyond those already outlined.  Exhibit 10F is a report by Dr. P. Saranga which was based on the opinions of Dr. Santucci and Dr. McNevin.  (Tr. 205-10).  Dr. Saranga did not have the opportunity to review and comment on Dr. Ruby's opinion.  Cf.  Social Security Ruling 96-6p, at. 3.

Although the ALJ's brief discussion of Dr. Ruby's report leaves the impression that he was restricting the plaintiff to a greater extent than the physician, this is not the case.  Social Security Ruling (SSR) 83-12 states, in pertinent part:

> In some disability claims, the medical facts lead to an assessment of [residual functional capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy-typically professional and managerial ones-in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. *However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.* In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.

SSR 83-12, at 4, <u>cited</u> in <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 498 (6th Cir. 1985).

Dr. Ruby's sitting and standing restrictions not only suggest a need to alternate positions, but total limits on all three activities raise the possibility that the plaintiff might not even be capable of full-time work.  Since the VE was not asked

11

about the effect of these restrictions on the job base, and since the ALJ provided no reasons for discounting the opinion of Dr. Ruby, who was at least arguably a treating source, a remand will be required for further vocational testimony.  Even if Dr. Ruby is not entitled to the deference due a long-time treating source, the other two examiners, Dr. Santucci and the chiropractor Dr. McNevin, stated that the plaintiff could perform a mild to moderate amount of sitting, ambulating, and standing; this implies that there would be some limitations on these activities as well.

The decision will be remanded for further consideration in accordance with this opinion.

This the 18th day of January, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**